UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO A NICHOLL, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br><br> Defendant. | Case No. 15-cv-00794-EMC <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> Docket Nos. 20, 21 |

## I.   INTRODUCTION

Plaintiff Marco A. Nicholl seeks judicial review of the Commissioner's final decision denying his application for disability insurance benefits.  Mr. Nicholl moves for summary judgment and seeks an order reversing the Commissioner's decision and ordering the payment of benefits or remanding for further proceedings.  Docket No. 20.  Defendant Carolyn W. Colvin in her capacity as Acting Commissioner of the Social Security Administration ("SSA") cross-moves for summary judgment and for affirmation of the Commissioner's final decision.  Docket No. 21.

## II.   LEGAL BACKGROUND

The SSA has established a five-step sequential process for evaluating physical and mental impairments to determine whether an individual is disabled.  *See* 20 C.F.R. 404.1520(a).  If the SSA determines that a claimant is not disabled at any step of the evaluation process, the evaluation does not proceed to the next step.  "[T]he ALJ considers whether a claimant is disabled by determining:

> (1) whether the claimant is 'doing substantial gainful activity';
>
> (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months;

> (3) whether the impairment 'meets or equals' one of the listings in the regulations;
>
> (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and
>
> (5) whether the claimant 'can make an adjustment to other work.' 20 C.F.R. §§ 404.1520(a), 416.920(a).

The claimant bears the burden of proof at steps one through four." *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (line breaks added). "At step five, the burden shifts to the Commissioner." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Thus, the ALJ must show that Nicholl can make an adjustment to other work.

### III.  FACTUAL AND PROCEDURAL BACKGROUND

On February 28, 2012, Plaintiff Marco A. Nicholl ("Mr. Nicholl") filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act"). *See* Administrative Record ("AR") at 174-182. Mr. Nicholl alleged disability beginning on February 1, 2012. *Id.* at 16. The SSA initially denied his claims on July 9, 2012 and again upon reconsideration on March 5, 2013. *Id.* at 70-80, 81-97. Mr. Nicholl then sought a hearing before an ALJ. *Id.* at 114-115.

ALJ Katherine Loo held a hearing on August 28, 2013. AR at 38-69. Mr. Nicholl appeared and testified at the hearing, and was represented by counsel. *Id.* at 16. A vocational expert ("VE"), Mary Ciddio, was scheduled to appear at the hearing but was unavailable. *Id*. Ms. Ciddio responded to interrogatories sent out post-hearing and her responses were submitted to Mr. Nicholl's attorney on September 13, 2013. *Id*. Mr. Nicholl's counsel did not submit any response within the 10 days provided for comment. *Id*.

On November 15, 2013, the ALJ issued her decision concluding that Mr. Nicholl was "not disabled" under the Social Security Act since he was "capable of making a successful adjustment to other work." *Id.* at 27. Mr. Nicholl's request for review of the decision by the Appeals Council was denied on December 18, 2014. *Id.* at 7-12.

A.  Mr. Nicholl's Application for Social Security Disability

Mr. Nicholl listed the following medical conditions in his social security disability

1   application: "1. Bipolar ii, depression, anger issues due to depression; 2. Obesity; 3. Pre-diabetes;
2   4. Shakes due to meds; 5. Vomiting due to meds (often if not daily)." AR at 203. Mr. Nicholl had
3   tried several medications to alleviate the symptoms of his impairments including a mood
4   stabilizer/anti-depressant, an anti-depressant/anti-psychotic, and an anti-psychotic. *Id.* at 205.

Occupationally, Mr. Nicholl stopped working on February 29, 2012 "[b]ecause of [his] condition(s)" and "[b]ecause of other reasons." AR at 203. He elaborated that he stopped working because he was "[l]aid off, lack of work" and because "[his] condition [was] getting worse." *Id.* at 203. In the 15 years before he became unable to work, Mr. Nicholl worked as a chimney sweeper from 2004 to 2006 and from 2008 to 2009. He also worked as a mover/driver from 2009 to 2012. *Id.* at 204.[1]

B.  ALJ Hearing and Decision

In her November 15, 2013 decision, ALJ Loo applied the five-step sequential evaluation process for determining whether an individual is disabled within the meaning of the Act. AR at 17; 20 C.F.R. § 404.1520(a).

At step one, the ALJ found that Mr. Nicholl had not engaged in substantial gainful activity since February 1, 2012. AR at 18. At step two, the ALJ found Mr. Nicholl had the following severe impairments: "mood disorder, not otherwise specified (NOS); bipolar disorder II; diabetes mellitus II with diabetic dyslipidemia . . . and obesity . . . ." *Id.* at 18. The ALJ found Mr. Nicholl's diagnoses of cervical and lumbar radiculopathy to be non-severe and found that his sporadic episodes of diarrhea did not satisfy the durational requirement. *Id.* at 19.

At step three, the ALJ found that Mr. Nicholl's impairments did not meet or medically equal the severity of the impairments listed in 20 C.F.R. Pt. 404 Subpt. P, Appendix 1. AR at 19. Specifically, the ALJ concluded that the severity of Mr. Nicholl's mental impairments did not "meet or medically equal the criteria of listing 12.04." *Id.* Under this listing, the disability

---

[1] Section 6 of the Disability Report Form SSA-3368 describes Mr. Nicholl's Job History. AR at 204. The form instructs, "List the jobs (up to 5) that you had in the 15 years before you became unable to work because of your physical or mental conditions." Mr. Nicholl lists the three periods of employment included here (2004 to 2006, 2008 to 2009, 2009 to 2012). It is unclear whether Mr. Nicholl was unemployed for the other years, or whether he neglected to list all employment.

3

benefits applicant must meet the criteria of both paragraphs A and B, or the criteria in paragraph C.  Paragraph A criteria are "Medically documented persistence, either continuous or intermittent, of one of the following:

>    1. Depressive syndrome characterized by at least four of the following:
>    a. Anhedonia or pervasive loss of interest in almost all activities; or
>    b. Appetite disturbance with change in weight; or
>    c. Sleep disturbance; or
>    d. Psychomotor agitation or retardation; or
>    e. Decreased energy; or
>    f. Feelings of guilt or worthlessness; or
>    g. Difficulty concentrating or thinking; or
>    h. Thoughts of suicide; or
>    i. Hallucinations, delusions, or paranoid thinking; or
>
>    2. Manic syndrome characterized by at least three of the following:
>    a. Hyperactivity; or
>    b. Pressure of speech; or
>    c. Flight of ideas; or
>    d. Inflated self-esteem; or
>    e. Decreased need for sleep; or
>    f. Easy distractibility; or
>    g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
>    h. Hallucinations, delusions or paranoid thinking; or
>
>    3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

Disability Evaluation Under Social Security, Listing of Impairments—Adult Listings (Part A) at §12.04 (line breaks added).  Paragraph B criteria are:

>    1. Marked restriction of activities of daily living; or
>
>    2. Marked difficulties in maintaining social functioning; or
>
>    3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
>    4. Repeated episodes of decompensation, each of extended duration).

*Id.*  Paragraph C criteria are:

>    1. Repeated episodes of decompensation, each of extended duration; or

>   2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
>   3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement).

*Id.* The ALJ found that the medical evidence showed Mr. Nicholl had mild restriction of activities in daily living, "moderate difficulties in maintaining social functioning," "moderate difficulties in maintaining concentration, persistence, or pace," and "no episodes of decompensation" of extended duration. *Id.* at 19-20. Accordingly "paragraph B" criteria were not satisfied. *Id.* at 20. The ALJ also found the evidence failed to establish the presence of "paragraph C" criteria "because the records do not indicate repeated episodes of decompensation; a residual disease process that has resulted in such marginal adjustment that a minimal increase in mental demands or environment would be predicted to cause decompensation; or an inability to function outside a highly supportive living arrangement." *Id.*

The ALJ next determined that Mr. Nicholl had the residual functional capacity ("RFC") required "to perform less than the full range of medium work as defined in 20 C.F.R. 404.1567(c)," that Mr. Nicholl "should not perform work at unprotected heights; can have rare (less than occasional) interaction with supervisors and co-workers; can have no interaction with the public; and is limited to performing routine work with minimal changes in the workplace environment." AR at 21. After considering the evidence, the ALJ found that Mr. Nicholl's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found Mr. Nicholl's statements regarding the "intensity, persistence and limiting effects of these symptoms" not entirely credible. *Id.* at 22. The ALJ elaborated that "[t]he claimant has not come forward with evidence of any nexus between obesity and additional limitations" and accordingly found "no limitations, over and above those stated above, due to obesity." AR at 23. The ALJ further noted that "the claimant's own statements about his daily activities are not fully consistent with his allegations of complete inability to work." AR at 26.

5

The ALJ considered the opinion of medical consultant Dr. Omar Bayne,[2] who conducted an orthopedic examination of Mr. Nicholl on January 15, 2013 and who "opined that the claimant should be able to stand and walk with appropriate breaks for 6 hours during an 8-hour work day." *Id.* at 23. Mr. Nicholl's diabetes was found to be under control. *Id.* Limitations stemming from Mr. Nicholl's obesity were incorporated into the residual functional capacity assessment and the ALJ found that "[t]he record does not support additional obesity-related restrictions." *Id.* The ALJ also took into account the opinion of Dr. Williams, a medical consultant who opined that "the claimant can perform a range of light exertional work," but accorded more weight to the opinion of Dr. Bayne as he had directly examined Mr. Nicholls. *Id.* at 24.

In a consultative psychological evaluation of Mr. Nicholl, clinical psychologist Dr. Ute Kollath opined that Mr. Nicholl was unimpaired in his ability to "follow simple and complex/detailed instructions; to maintain adequate pace or persistence to perform simple repetitive tasks and complex tasks; and to maintain adequate attention/concentration." *Id.* at 24. Dr. Kollath also opined that Mr. Nicholl was "mildly impaired in the abilities to adapt to changes in job routine and to withstand the stress of a routine workday" and that he was "moderately impaired in the abilities to interact appropriately with co-workers, supervisors, and the public on a regular basis, and to adapt to changes, hazards, or stressors in the workplace setting." *Id.* The ALJ accorded great weight to Dr. Kollath's opinion, with the exception of "his diagnoses to rule-out substance disorder and substance-induced mood disorder," noting that "[t]he medical evidence

---

[2] The ALJ's decision refers to several physicians and their consultative reports without clarification as to whether they were treating physicians, examining physicians, or nonexamining physicians for Mr. Nicholl. The Ninth Circuit distinguishes between three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight will be accorded to the opinion of treating physicians over those of non-treating physicians. *Id.* ("At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons. . . . [T]he Commissioner may not reject [the treating doctor's] opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing.") The ALJ notes that she accorded more weight to Dr. Baynes' opinion than to Dr. Williams' opinion because Dr. Baynes "examined the claimant and his opinion is more consistent with the overall evidence of record." AR at 24. She also accorded great weight to the opinion of Dr. Kollath, who conducted a "consultative psychological evaluation." *Id.*

of record does not support such diagnoses." *Id.*[3]

The ALJ further considered reports by Dr. Robert Fusco - of the East Bay Department of Psychiatry - who examined Mr. Nicholl seven times. The record does not specify whether Dr. Fusco was a treating physician, but it does indicate that he provided direct reports of Mr. Nicholl's clinical status and that he discussed medication plans with Mr. Nicholls. AR at 326-27. The first examination was conducted on July 23, 2010 and the last examination reported in the record was on October 19, 2012. AR at 24-25. In July 2010, Dr. Fusco diagnosed Mr. Nicholl with bipolar disorder II and reported his "symptoms were partially resolved, but that he had some residual problems with both depression and hypomania/rage." Dr. Fusco tested Mr. Nicholl's Global Assessment of Functioning ("GAF") score a number of times between July 2010 and October 2012. The GAF scale ranges 0 to 100 with higher scores indicating greater levels of functioning.[4] In July 2010 Dr. Fusco assessed a GAF score of 61-70, "indicating mild symptoms." *Id.* at 25. In August 2010 Dr. Fusco assessed a GAF score of 51-60, "indicating moderate symptoms" and added lithium to Mr. Nichol's medications "for additional mood stabilization." *Id.* In March 2012 Dr. Fusco assessed Mr. Nicholl's GAF at 71-80, reporting that he was "not a danger to self or to others" and in September 2012 Dr. Fusco assessed a GAF score of 61-70 noting that Mr. Nicholl "showed marked improvement and was doing well on his current regimen." *Id.* In October 2012 Dr. Fusco assessed Mr. Nicholl's GAF score as 71-80 noting that he was "stable and doing well on current regimen." *Id.* The ALJ concluded from the medical reports that Mr. Nicholl's symptoms had stabilized since the adjustment of his lithium dosage and that "his mental status examinations

---

[3] The medical evidence of record is a urine toxicology screen test, which shows negative results. AR at 312-313. Dr. Kollath's opinion and the negative result of the urine toxicology test seem to validate the same point: that Mr. Nicholl did not have a substance abuse problem at the time of testing. However, the ALJ seems to have suggested that a negative result of the urine toxicology test is not enough to rule out past substance disorder, or substance-induced mood disorder stemming from Mr. Nicholl's history of drug use. AR at 22.

[4] The GAF scale reports an individual's "psychological, social, and occupational functioning." It was used in the fourth edition of the Diagnostic and Statistical Manual (DSM-iv) and reports an individual's "psychological, social, and occupational functioning" and was viewed as "particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *Torres v. Colvin*, No. 13 CIV. 8224 GWG, 2015 WL 1218705, at *1 nn.3-7 (S.D.N.Y. Mar. 17, 2015).

have been within normal limits." *Id.*

Overall, the ALJ concluded that Mr. Nicholl's "own statements about his daily activities are not fully consistent with his allegations of complete inability to work" and that while Mr. Nicholl is not "at all times symptom free, the evidence does not support the degree of limitations alleged." AR at 26. The ALJ determined that Mr. Nicholl had the RFC required "to perform less than the full range of medium work as defined in 20 C.F.R. 404.1567(c)." AR at 21. The ALJ specifically determined,

> [Mr. Nicholl] can lift and/or carry 40 pounds occasionally and 20 pounds frequently; can stand and/or walk with appropriate breaks for 6 hours in an 8-hour workday; can occasionally crouch, crawl, kneel, stoop, balance, climb stairs, ramps, or ladders; can frequently finger, feel, grip, and grasp; should not perform work at unprotected heights; can have rare (less than occasional) interaction with supervisors and co-workers; can have no interaction with the public; and is limited to performing routine work with minimal changes in the workplace environment.

*Id.* The ALJ then proceeded to step four of the five-step sequential evaluation process and concluded Mr. Nicholl was unable to perform any past relevant work. AR at 26. This conclusion was based on the VE's classification of Mr. Nicholl's past relevant work according to the Dictionary of Occupational Titles ("DOT") and finding that "an individual with the same age, education, work experience, and residual functional capacity . . . could not perform these positions." Mr. Nicholl's prior occupations as chimney sweep, mover/driver, and painter all exceeded his current RFC. *Id.*

Finally, at step five the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," considering his RFC, age, education and work experience, in conjunction with the Medical-Vocational Guidelines. *See* 20 C.F.R. Pt. 404, Subpt. P, Appendix 2. Because these jobs are available, Mr. Nicholl is not disabled under the Social Security Act. AR at 27. The ALJ found Mr. Nicholl could perform the full range of medium work, and consulted with the VE regarding the extent to which requirements of this level of work would be impeded by additional limitations. The VE reported that "given all of these factors[,] the individual would be able to perform the requirements of representative occupations such as Electrical Assembly . . . Inspector and Hand Packager . . . and Photocopy

1  Machine Operator," and that each of these occupations existed in significant numbers in the
2  national economy. *Id.*
3      The ALJ assessed and approved the VE's conclusions regarding Mr. Nicholl's residual
4  functional capacity, referring to the medical evidence submitted and the requirements of 20 C.F.R.
5  404.1527 and Social Security Rulings 96-2p, 96-5p, 96-6p and 06-3p. AR at 21. The ALJ
6  concluded that "the claimant has the residual functional capacity to perform less than the full
7  range of medium work as defined in 20 CFR 404.1567(c)." *Id.*
8      According to the DOT, the identified occupations of inspector and hand packager,
9  photocopy machine operator, and electrical assembly all have a specific vocational preparation
10 (SPV) level 2 and a reasoning level 2. *See* DOT's 559.687-074, 207.685-014, and 729.687-010.
11 Although Mr. Nicholl refers to the electrical assembly position as requiring reasoning level 3 and
12 contends that this designation conflicts with Mr. Nicholl's "limitation to simple, repetitive tasks,"
13 Plaintiff's Brief ("PB") at 12, the DOT lists the reasoning level as level 2, and this corresponds
14 with the reasoning level of the other two vocations identified by the VE as suitable to Mr.
15 Nicholl's limitations.

### IV. STANDARD OF REVIEW

After a Commissioner has issued a final decision, a petitioner may seek judicial review of that decision by a district court. 42 U.S.C. § 405(g). District courts "shall have the power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing." *Id.* Congress prioritizes agency expertise and discretion, and limits review of agency decisions by the courts. *See Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 621 (1966) ("Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency."). The Commissioner's decision will only be disturbed "if it is not supported by substantial evidence or is based on legal error." *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d at 1110-11

9

1  (quoting *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009)). Such
2  evidence must be "more than a mere scintilla," but less than a preponderance. *Id.* If the evidence
3  supports more than one rational interpretation, the Court must uphold the ALJ's findings "if they
4  are supported by inferences reasonably drawn from the record." *Id.* (quoting *Tommasetti,* 533
5  F.3d 1035, 1038 (9th Cir. 2008)). The Court also may not reverse an ALJ's decision for harmless
6  error, with the burden for showing harm falling upon the party challenging the agency's
7  determination. *Id.* (citing *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009)).

## V. DISCUSSION

Mr. Nicholl expressly challenges only the ALJ's determination at step five of the sequential disability analysis, but implicitly challenges the ALJ's determination at step four as well.

### A. Mr. Nicholl's Testimony Was Not Improperly Excluded

Mr. Nicholl argues that his testimony regarding his ability to work was improperly excluded by the ALJ. Though he says it was excluded, what he means is that it was discredited. The ALJ did not exclude Mr. Nicholl's testimony but rather noted that, "claimant's own statements about his daily activities are not fully consistent with his allegations of complete inability to work" and concluded that "the evidence does not support the degree of limitations alleged." AR at 26. The ALJ resolved discrepancies between Mr. Nicholl's allegations and the medical record with reference to physicians' assessments.

The standard for discrediting a claimant's testimony is established in *Thomas v. Barnhart*. 278 F.3d 947 (9th Cir. 2002). In that case, the Ninth Circuit held that when weighing a claimant's credibility, the ALJ may consider "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimaint's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" 278 F.3d at 958–59 (quoting *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 791 (9th Cir. 1997)). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.* As ALJ's rejection of claimant's testimony may be upheld if it was "based on clear

1  and convincing reasons supported by specific facts in the record that demonstrate an objective
2  basis for his finding." *Connett v. Barnhart*, 340 F.3d 871, 873–74 (9th Cir. 2003). In *Connett*, the
3  court upheld the district court's ruling in part, because "the ALJ's rejection of [claimant's] claims
4  regarding her limitations [was] based on clear and convincing reasons supported by specific facts
5  in the record that demonstrate an objective basis for his finding." 340 F.3d at 873. However, it
6  reversed the district court's ruling on other claims where it found that the ALJ "did not assert
7  specific facts or reasons to reject [the plaintiff's] testimony." 340 F.3d at 874.

8       Mr. Nicholl argues that the ALJ improperly discredited his testimony. *See* Plaintiff's
9  Reply ("PR") at 6 (citing *Connett*, 340 F.3d at 874). But here, the ALJ evaluated Mr. Nicholl's
10 allegations and testimony in light of the full record of medical reports and evaluations. She
11 addressed Mr. Nicholl's symptoms of nausea, and found they were attributable to the adjustment
12 in his lithium dose. AR at 26. She noted that Mr. Nicholl's reported diarrhea appeared to have
13 been only episodic. *Id.* She dismissed Mr. Nicholl's reported shaking because "there is no
14 indication in the treatment notes that the claimant has any hand tremors or uncontrollable
15 shaking." *Id.* The ALJ also addressed the Third Party Function Report submitted by Mr.
16 Nicholl's wife and noted that her report that his medications "give him violent hand tremors so
17 that he cannot write legibly" was not supported by the treatment records. AR at 26. The ALJ
18 found that allegations by Mr. Nicholl's wife that Mr. Nicholl "does not get along with others"
19 were credible, and that they were encompassed by the RFC. *Id.* As in *Connett*, the ALJ referred
20 to and relied upon specific testimony, identified which testimony was credible and which was not,
21 and explained why she did not credit this testimony. Compare A.R. at 26 with *Connett*, 340 F.3d
22 at 874.

23       *See Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational
24 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.");
25 *Molina*, 674 F.3d at 1111 ("Even when the evidence is subject to more than one rational
26 interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably
27 drawn from the record.").

28       The ALJ's determination was supported by specific reasons and substantial evidence.

11

B. <u>The ALJ Did Not Err in Her Step Four Determination</u>

Mr. Nicholl alleges that his assessed RFC renders him unable to perform the alternative work identified at step five of the sequential analysis (electrical assembly, inspector and hand packager, photocopy machine operator). He contends that, because he cannot perform this work, the ALJ erred in its determination. By contesting the ALJ's RFC finding, Mr. Nicholl is implicitly disputing her step four determination.

The ALJ did not err in relying on the VE's testimony and the medical evaluations, and her decision is supported by substantial evidence. The ALJ considered the claimant's medically determinable impairments but elaborated, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR at 22. The ALJ notes that "[w]hile the claimant alleges significant limitations regarding his functioning, the record does not support the level of restrictions alleged." *Id.* at 26. The ALJ further found that "the claimant's own statements about his daily activities are not fully consistent with his allegations of complete inability to work." *Id.* As noted above, the ALJ's assessment of Mr. Nicholl's credibility was supported by substantial evidence. Furthermore, the ALJ's assessment of the mental component of Mr. Nicholl's RFC were based on findings from the consultative medical evaluations conducted by Dr. Fusco between 2010 and 2012 as well as to the consultative psychological evaluation conducted by Dr. Kollath in January 2013. AR at 24-25.

The law requires deference to the ALJ's interpretation of the evidence unless it is "plainly erroneous or inconsistent with the regulation." *Buschmann v. Schweiker*, 676 F.2d 352, 355 (9th Cir 1982) (citing *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356 (1973)). The ALJ's assessment of Mr. Nicholl's RFC was neither "plainly erroneous" nor "inconsistent with the regulation."

C. <u>The ALJ Met the Burden of Identifying Alternative Work Under Step Five of the Sequential Disability Analysis</u>

At step five, the ALJ had to demonstrate that work suited to Mr. Nicholl's limitations exists in significant numbers in the national economy. *See Tacket*, 180 F.3d at 1099 ("If the claimant is able to do other work, then the Commissioner must establish that there are a significant

12

number of jobs in the national economy that claimant can do."); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The ALJ may rely on the testimony of a VE to "identify jobs that match the abilities of the claimant, given [his] limitations." 60 F.3d at 1432. Here, the VE stated that Mr. Nicholl could perform the jobs of electrical assembly person, inspector and hand packager, or photocopy machine operator. AR at 275. The ALJ determined the VE's testimony to be consistent with the DOT and relied on this testimony in her decision. AR at 27.

Mr. Nicholl argues the ALJ's decision is contrary to the Program Operations Manual (POMS) published by the Social Security Administration. The POMS elaborates "basic mental demands of competitive, remunerative, unskilled work." PB at 7. Mr. Nicholl argues that "[b]ecause the POMS provisions correlate with the mental residual functional capacity assessment protocol . . . and construe the residual functional capacity assessment process for mental impairments, the Court should grant persuasive weight to that structure." PB at 12. While Mr. Nicholl contends the Court should give persuasive weight to POMS, he concedes on the other hand that "[t]he law of the circuit requires that the Court defer to the Commissioner's interpretation of her own regulations unless that is 'plainly erroneous or inconsistent with the regulation.'" PB at 8.

In this case, the ALJ did not refer to POMS in her decision. This does not constitute error because POMS is not binding on the ALJ. *See Lockwood v. Comm'r of Soc. Sec.*, 616 F.3d 1068, 1072 (9th Cir. 2010) ("POMS constitutes an agency interpretation that does not impose judicially enforceable duties on this court or the ALJ."); *see also Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1004 (9th Cir. 2006) ("The POMS does not have the force of law, but it is persuasive authority."). Because POMS is not binding, the ALJ did not err by not giving it persuasive weight in her opinion.

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. §405(g). The only circumstances under which the decision to deny benefits may be disturbed is 1) if it is "not supported by substantial evidence" or 2) if it is "based on legal error." *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989) (quoting *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432 (9th Circuit 1988)). As noted above, the

standard for "substantial evidence" is "more than a mere scintilla but less than a preponderance." *Id.* (quoting *Davis v. Heckler*, 868 F.2d 323 (9th Circuit 1989)). In *Andrews*, the court held that

> [t]o determine whether substantial evidence supports the ALJ's decision, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. . . . The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. . . . We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.

53 F.3d at 1039-40.

Here, as noted above, the ALJ sufficiently considered the record in assessing Mr. Nicholl's RFC. The ALJ then identified the correct regulations, and accurately applied these regulations to Mr. Nicholl's facts, concluding that Mr. Nicholl, as the VE stated, could perform electrical assembly tasks, or the jobs of inspector and hand packager or photocopy machine operator. In so doing, the ALJ relied on the medical evidence submitted, the requirements of 20 C.F.R. 404.1527, and Social Security Rulings 96-2p, 96-5p, 96-6p and 06-3p. The ALJ also noted that the jobs recommended by the VE "exist in significant numbers in the national economy." A.R. at 21. The ALJ's conclusions are rational and supported by substantial evidence.

## VI. CONCLUSION

Mr. Nicholl's motion for summary judgment is **DENIED** and the defendant's cross-motion for summary judgment is **GRANTED**.

This order disposes of Docket Nos. 20 and 21. The Clerk is directed to enter judgment and close the file in this case.

**IT IS SO ORDERED**.

Dated: August 26, 2016

_____
EDWARD M. CHEN
United States District Judge